UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BRICKLAYERS INSURANCE AND
WELFARE FUND; BRICKLAYERS
PENSION FUND; BRICKLAYERS
SUPPLEMENTAL ANNUITY FUND;
BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL PENSION FUND; NEW
YORK CITY AND LONG ISLAND JOINT
APPRENTICESHIP AND TRAINING FUND;
INTERNATIONAL MASONRY INSTITUTE;
JEREMIAH SULLIVAN, JR., in his fiduciary
capacity as Administrator and Chairman of
Trustees; BRICKLAYERS LOCAL 1;
INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFT
WORKERS; and BRICKLAYERS LABOR
MANAGEMENT COMMITTEE,

**MEMORANDUM & ORDER**
16-CV-360 (PKC) (RER)

                   Plaintiffs,

        - against -

PROFESSIONAL PAVERS CORP.,

                   Defendant.
----------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiffs' counsel, Michael Minnefor ("Minnefor") of Doar Rieck Kaley & Mack ("DRKM"), moves for approval of attorneys' fees and costs totaling $15,179.94. (Dkt. 36.) The motion is unopposed. For the reasons set forth below, the Court grants the request for attorneys' fees, but reduces those fees to $5,269.50, and denies the request for costs.

## BACKGROUND

On January 22, 2016, Plaintiffs commenced this action to enforce provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") based on Defendant Professional

1

Pavers' ("Pavers") alleged failure to make employee benefit fund contributions and Duarte Lopes' ("Lopes") alleged breaches of fiduciary duty. (*See generally* Dkt. 1.)

The parties eventually resolved the dispute and filed a Stipulation of Settlement and Dismissal. ("Settlement Stipulation," Dkt. 18.) Pursuant to the Settlement Stipulation, by June 16, 2017, Lopes was required to pay Plaintiffs $3,834.50, and Pavers was required to pay $15,805.99 or alternatively execute a Consent Judgment in the same amount. (Dkt. 18 ¶¶ 1–3.) Further, the action would be "dismissed without costs or expenses to any party, subject to the parties' compliance with the terms [of the stipulation]," the Court would retain jurisdiction over the matter, and Plaintiffs could "reopen th[e] action in the event of default." (*Id.* ¶ 5.)

The Court So Ordered the Stipulated Settlement on June 12, 2017. (6/12/2017 Docket Order.) Lopes performed in compliance with the stipulation. (Dkt. 36 at 1.) Pavers did not. (*Id.*) On January 14, 2020, Plaintiffs moved to reopen the case. (Dkt. 19.)

The Court held a status conference on February 6, 2020, and, *inter alia*, granted Plaintiffs' motion to reopen and dismissed Lopes from this case. (2/6/2020 Minute Entry.) On March 12, 2020, following another conference, the Court noted on the docket that Plaintiff's motion to reopen did not expressly move to enforce the Settlement Stipulation, but that the Court would construe Plaintiff's on-the-record request as such. (3/12/2020 Docket Order.) The Court ordered Plaintiffs to submit a proposed order for enforcement that included the dollar calculations and liquidated damages as permitted under ERISA (*id.*), with leave to submit a motion for attorneys' fees (3/12/2020 Minute Entry). Plaintiffs filed a proposed order for enforcement on March 13, 2020. (Dkt. 29.)

On March 17, 2020, the Court *sua sponte* reconsidered its March 12, 2020 Order, and directed Plaintiffs to move to enforce the Settlement Stipulation as written and propose a judgment

2

against Pavers in the amount of $15,805.99, with leave to move for "appropriate Attorneys' Fees and Costs *related to their enforcement actions*." (3/17/2020 Docket Order (emphasis added).) Or, alternatively, Plaintiffs could request a certificate of default and then move for a judgment of default within 30 days, requesting the full amount of damages, including liquidated damages and interest, fees, and costs as permitted under 29 U.S.C. § 1132(g)(2), assuming a finding of liability. (*Id.*)

Plaintiffs moved to enforce the Stipulated Settlement against Pavers by judgment in the amount of $15,805.99. (Dkt. 31.) On June 11, 2020, the Court ordered Plaintiffs' judgment against Pavers in the amount of $15,805.99, and directed Plaintiffs to file a motion for attorneys' fees and costs within 14 days. (Dkt. 32.)

On August 6, 2020,[1] Minnefor filed the instant motion seeking attorneys' fees going back to the "initiation of the litigation." (Dkt. 36-1, ¶ 8.) Minnefor seeks $6,640 in attorneys' fees and $715.32 in costs for 34.5 hours of work performed from initiation of the litigation through the date the Settlement Stipulation was filed. (*Id.* ¶¶ 8, 9.) Minnefor also seeks $5,855 in attorneys' fees and $1,969.62 in costs for 24.9 hours of work performed by himself, and 3.5 hours of work performed by his co-counsel David Rivera, from Pavers' breach to May 17, 2020. (*Id.*; *see also* Exhibit 1 ("Ex. 1"), Dkt. 36-2 at 7.)[2] In total, Minnefor seeks $12,495 in attorneys' fees and $2,684.94 in costs. (Dkt. 36-1, ¶ 10.)

---

[1] The Court granted Minnefor three extensions of time to file his motion for attorneys' fees and costs, and thus considers the August 6, 2020 motion to be timely.

[2] Although Minnefor's declaration refers to $1,969.26 in post-breach costs (*see* Dkt. 36-1, ¶ 8), the billing records attached to the declaration itemize $1,969.62 in post-breach costs (see Ex. 1, Dkt. 36-2 at 7). The Court assumes $1,969.62 is the correct calculation.

3

**DISCUSSION**

**I.      Scope of the Request for Attorneys' Fees and Costs**

As an initial matter, the Court must resolve whether Minnefor is entitled to attorneys' fees and costs going back to the initiation of the lawsuit, or if he is limited to fees and costs associated with enforcement of the Settlement Stipulation.

When the Court is "entering judgment pursuant to a settlement agreement, the Court may only award the forms of relief agreed to by the parties."[3] *Gesualdi v. PAV-CO Asphalt, Inc.*, No. 09-CV-2503 (ARR), 2011 WL 2433731, at *4 (E.D.N.Y. May 23, 2011) (citing *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986), *report and recommendation adopted*, 2011 WL 2416381 (E.D.N.Y. June 14, 2011). In determining the agreed upon forms of relief, the settlement agreement should be construed according to general principles of contract law, dictating that "courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *See Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004) (citing *Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir. 1999)); *see Gesualdi*, 2011 WL 2433731, at *2.

Accordingly, when interpreting terms related to the payment of attorneys' fees and costs, courts will approve those fees and costs the parties contracted for in the settlement agreement. *See Pristine Jewelers NY, Inc. v. Broner*, No. 18-CV-12155 (LJL), 2020 WL 2319184, at *3 (S.D.N.Y.

---

[3] The Court retains jurisdiction over this action for purposes of enforcing the Settlement Stipulation because it was So Ordered by the Court on June 12, 2017 (*see* 6/12/2017 Docket Order). *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994); *Hendrickson v. United States*, 791 F.3d 354, 359–60 (2d Cir. 2015) ("[T]here are only two ways in which a district court may retain ancillary jurisdiction to enforce the terms of a settlement agreement: it may 'expressly retain jurisdiction over enforcement of the agreement' in an order of the court, or it may 'incorporate . . . the terms of that agreement' in such an order." (citation omitted)).

May 11, 2020) (approving attorneys' fees and costs consistent with a settlement agreement under which Plaintiff is entitled to "costs and reasonable attorney's fees attendant to th[e] case and any collection proceedings" in the event of breach); *Gesualdi*, 2011 WL 2433731, at *4 (approving attorneys' fees consistent with a settlement agreement under which defendant agreed to pay "additional attorneys' fees incurred from March 1, 2011" in the event of their default); *Kasperek v. City Wire Works, Inc.*, No. 03-CV-3986 (RML), 2009 WL 691945, at *3 n.1 (E.D.N.Y. Mar. 12, 2009) (approving attorneys' fees consistent with a settlement agreement that states "the non-breaching party or parties are entitled to recover against the breaching party or parties damages, including costs, expenses and reasonable attorneys' fees, accruing . . . as a consequence of the Breach"); *cf. Sanchez-Ramirez v. Masters Food Serv. Inc.*, No. 14-CV-9970 (GWG), 2017 WL 3600423, at *3 (S.D.N.Y. Aug. 18, 2017) (denying request for attorneys' fees incurred while enforcing a settlement agreement that "does not provide for the payment of attorneys' fees following default or at any other time"); *Gesualdi v. Advanced Ready Mix Corp.*, No. 10-CV-3499 (SLT) (SMG), 2012 WL 4739269, at *7 (E.D.N.Y. Sept. 28, 2012) (approving attorneys' fees from October 21, 2010 to October 31, 2012, where stipulation provided recovery for "all additional attorneys' fees incurred by the Plaintiffs from October 21, 2010 and forward," but denying request for "costs," which were not addressed in the stipulation).

  Here, the Settlement Stipulation provides that "[t]he instant action is dismissed without costs or expenses to any party, subject to the parties' compliance with the terms . . . set forth herein." (Dkt. 31-1 ¶ 5.) Minnefor points to this language, and the fact that the complaint sought attorneys' fees and costs pursuant to ERISA Section 503(g)(2)(D), and argues that an award of attorneys' fees and costs should go back to the initiation of the litigation. (Dkt. 36 at 2.) Unlike in other cases where the settling parties clearly stated their intentions with respect to attorneys'

5

fees and costs, *see Pristine Jewelers NY, Inc.*, 2020 WL 2319184, at *3; *Gesualdi*, 2011 WL 2433731, at *4; *Kasperek*, 2009 WL 691945, at *3 n.1, the Stipulated Settlement requires some interpretation. While the Court agrees that the Stipulated Settlement may be read to require a non-compliant Defendant to bear some costs and expenses, this requirement should be limited to those costs and expenses associated with enforcing the Stipulated Settlement.

Such an interpretation follows from the language of the Stipulated Settlement itself. Immediately after providing that the action is "dismissed without costs or expenses to any party, subject to the parties' compliance," the agreement states that "[t]he Court shall retain jurisdiction over this matter and Plaintiffs may reopen this action in the event of default or failure of any payment or conditions agreed to or required." (Dkt. 31-1, ¶ 5.) Read together, these provisions support the conclusion that Plaintiff is entitled to attorneys' fees and costs associated with reopening this matter and enforcing the Stipulated Settlement. To hold otherwise, would "impose obligations [on Pavers] that are not mandated by the unambiguous terms of the agreement itself." *See Torres*, 356 F.3d at 245.

The Court made its view clear when it directed Plaintiffs to either move to *enforce the Settlement Stipulation as written*, with leave to move for "appropriate Attorneys' Fees and Costs *related to their enforcement actions*," or, alternatively, to request a certificate of default and move for a judgment of default. (3/17/2020 Docket Order (emphasis added).) Plaintiffs opted for the former. Rather than requesting a certificate of default and moving for a judgment of default, which would have entitled them to seek, *inter alia*, the full amount of fees and costs as permitted under 29 U.S.C. Section 1132(g)(2) (*see* 3/17/2020 Docket Order), Plaintiffs pursued a motion to enforce the Settlement Stipulation as it is written. Plaintiffs are therefore limited to the fees and costs they contracted for in the agreement.

## II. Attorneys' Fees

When analyzing a request for attorneys' fees, a court must determine the "lodestar" or "presumptively reasonable fee," which is calculated by multiplying a "reasonable hourly rate" by "the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see Trs. of Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co.*, No. 18-CV-7224 (AMD) (RER), 2019 WL 3937132, at *10 (E.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019) ("The presumptively reasonable fee is the product of two figures: the reasonable hourly rate and the number of hours reasonably spent on the litigation."); *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 278–79 (E.D.N.Y. 2014).

### A. Reasonable Hourly Rate

"[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)). This determination is "locality-sensitive," with courts looking to "the prevailing market rates in the relevant community,'" *Andrews v. City of New York*, No. 14-CV-1721 (FB) (CLP), 2015 WL 5773961, at *5 (E.D.N.Y. Sept. 29, 2015) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)), defined as "the district in which the court sits," *id.* (quoting *Farbotko,* 433 F.3d at 208). In this district, prevailing rates for attorneys "are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2020 WL 5802362, at *4 (E.D.N.Y. Sept. 28,

7

2020) (quoting *Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 404 (E.D.N.Y. 2019)); *see also Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020) (collecting cases).

Further, courts look for guidance in the hourly rates approved in cases with attorneys performing similar work, and in this district, have approved hourly rates between $200–$350 for work on ERISA default cases. *See Finkel v. Millennium Fire Servs., LLC*, No. 18-CV-3538 (NG) (JO), 2019 WL 1605186, at *4 (E.D.N.Y. Mar. 29, 2019) (approving $350 hourly rate for partners and $275 hourly rate for associates as within the range of rates awarded in other ERISA default judgment matters); *Cent. Fur Storage Co.*, 2019 WL 3937132, at *12 (approving $300 hourly rate for a partner as "squarely in the range of rates typically awarded to partners in ERISA cases" and $200–$250 hourly rates for associates given that the "prevailing hourly rate for associate attorneys in ERISA actions ranges from approximately $200 to $275") (collecting cases); *UFCW Local 174 Pension Fund v. 5600 Mkt. Corp.*, No. 17-CV-5789 (CBA) (CLP), 2018 WL 4403394, at *9 (E.D.N.Y. Aug. 16, 2018) (finding that a $400 hourly rate for partners is at the "upper end of rates awarded in this district for counsel in ERISA matters" and that "an hourly rate of $350 per hour more appropriately reflects both the attorneys' experience and the quality of the work performed in this straightforward ERISA default"), *report and recommendation adopted as modified*, 2018 WL 4388452 (E.D.N.Y. Sept. 14, 2018) (modifying accrued interest total); *Trs. of the Local 7 Tile Indus. Welfare Fund v. Tuckahoe Tile, Inc.*, No. 15-CV-5535 (RJD) (CLP), 2016 WL 8711716, at *12 (E.D.N.Y. Sept. 2, 2016), *report and recommendation adopted*, 2016 WL 8711437 (E.D.N.Y. Sept. 30, 2016) ("Based on the Court's knowledge of the rates generally charged in this district for legal work in ERISA default cases, the Court finds the hourly rate of $200.00 for the work of [associates] to be reasonable.").

DRKM bills at an hourly rate for matters such as this one. (Dkt. 36-1, ¶ 6.) Minnefor graduated from law school in 2008, is Of Counsel at DRKM, has "worked regularly as lead counsel or co-counsel for multiemployer employee benefit plans in ERISA litigations," and was billed at an hourly rate of $200 in connection with this case. (*Id.* ¶ 4.) David Rivera graduated from law school in 1988, practiced as a litigator at an international large firm, worked in-house at an investment bank, is also Of Counsel at DRKM, serves as co-counsel to Minnefor on multiemployer employee benefit plans in ERISA litigations, and was billed at an hourly rate of $250 in connection with this case. (*Id.* ¶ 5.)

The Court concludes that these hourly rates are consistent with, or below, what has been deemed reasonable by courts in this district for comparable work by similarly experienced attorneys. *See Finkel,* 2019 WL 1605186, at *4; *Cent. Fur Storage Co.*, 2019 WL 3937132, at *12; *5600 Mkt. Corp.*, 2018 WL 4403394, at *9; *Tuckahoe Tile, Inc.*, 2016 WL 8711716, at *12. Minnefor has practiced for a dozen years and works regularly on ERISA matters. Rivera has practiced for more than thirty years, and though it appears he has worked on a wide range of matters during his career, he presently co-counsels multiple ERISA litigations. The Court approves fees for Minnefor at $200 per hour and Rivera at $250 per hour.

### B.     Reasonable Number of Hours

In determining the reasonable number of hours required by a case, the court "must examine the particular hours expended by counsel with a view to the value of the work product to the client's case," *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015) (citing *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (per curiam)), and "should exclude excessive, redundant or otherwise unnecessary hours," *id* (citing *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). "The Second Circuit has also recognized the authority of district courts to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee

9

application." *Echevarria*, 102 F. Supp. 3d at 521 (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir.1987) (internal quotation marks omitted)); *accord Tuckahoe Tile, Inc.*, 2016 WL 8711716, at *13 ("Rather than itemizing individual entries as excessive, the court may make an 'across-the-board reduction, or percentage cut, in the amount of hours' . . . [and] courts routinely apply across-the-board reductions for vague entries." (internal citation omitted)).

A party seeking attorneys' fees must support "its claim of hours expended by accurate, detailed, and contemporaneous time records." *Echevarria*, 102 F. Supp. 3d at 516 (citing *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983)). Although counsel is not required to "record in great detail how each minute of [their] time was expended," counsel should at least "identify the general subject matter of [their] time expenditures." *Id.* at 521 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). Further, while "block billing"[4] is permitted, it makes it "particularly difficult for the Court to evaluate whether time spent on a given task was excessive." *Thai-Lao Lignite (Thailand) Co.*, 2012 WL 5816878, at *10. As a result, courts have reduced or disallowed attorneys' fees where block billing failed to provide sufficient detail to determine whether time spent on particular tasks was reasonable. *See id.* (collecting cases); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (summary order) (affirming 15% across-the-board reduction in time entries where approximately one-third of the hours comprise block billing and nearly half of those entries raised concerns about reasonableness); *Gesualdi*, 5 F. Supp. 3d at 281 (denying attorneys' fees for block entries because the court could not discern the subject matter of the work).

---

[4] "Block billing" refers to the practice of recording the total number of hours spent on the matter each day without indicating how much time was spent on each task. *Thai-Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, No. 10-CV-05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012).

From the time Pavers breached the Settlement Stipulation (June 16, 2017) to the time the Court entered judgment (June 11, 2020), Minnefor billed 24.9 hours and Rivera billed 3.5 hours, totaling 28.4 hours. (Dkt. 36-1, ¶ 8.) DRKM has provided contemporaneous records reflecting time expended on this matter. (Dkt. 36-1, ¶ 3; Ex. 1, Dkt. 36-2.) The majority of the entries refer to vague tasks such as "correspondence with opposing counsel," "reviewed file/docket," "reviewed court filings/scheduling order," and/or "follow-up," without identifying any subject matter or providing further description of the work performed. (*See generally* Ex. 1, Dkt. 36-2.) Of the 24 entries dated June 16, 2017 or later (i.e., post-breach), 14 (or approximately 58%) are block-billed. (*See id.* at 4–6.)

Given the challenges inherent to analyzing block-billed entries with vague language, the Court has, to the best of its ability, scrutinized each of the entries to assess reasonableness and concludes that some of the entries are excessive or otherwise unnecessary. For example, DRKM billed four-and-a-half hours for drafting, reviewing, and filing the letter motion to reopen this matter, with attendant notice and exhibits, at a cost of $1,075. (*Id.* at 4–5.) The notice is one-sentence long, the motion is two-paragraphs long, and simply re-states the terms of the Settlement Stipulation without any argument or analysis, and the exhibits consist of the Settlement Stipulation and an ECF email bounce recording the Court's June 12, 2017 Order dismissing the case.[5] (Dkt. 19.) Given the simplicity of these papers, which largely re-purposed previously drafted language, the Court finds these hours to be excessive.

DRKM also billed four hours for researching Rule 11 sanctions and drafting a sanctions motion, at a cost of $800. (Ex. 1, Dkt. 36-2, at 5.) The Rule 11 research was billed on February 22, 2020, the day after the Court *sua sponte* raised the possibility of sanctions against Pavers'

---

[5] The exhibits also appear to erroneously include letters related to other matters.

11

counsel in a scheduling order (2/21/2020 Docket Order).[6] The sanctions motion was not necessary, nor was it filed. While some research into Rule 11 sanctions may have provided helpful background for the March 12, 2020 conference on the topic, the apparent extent of the research here and the drafting of a sanctions motion were both excessive and unnecessary.

Further, on March 12, 2020, DRKM billed five hours for performing legal research, reviewing the file, preparing for and attending the hearing, reviewing court filings/scheduling order, and "follow-up/direction," at a cost of $1,000. (Ex. 1, Dkt. 36-2, at 5–6.) The March 12, 2020, conference, which was scheduled *sua sponte* by the Court to determine whether to impose sanctions against Pavers' counsel, lasted approximately one hour. Even assuming the March 12, 2020 time entry includes time spent drafting the two-page proposed judgment filed on March 13, 2020 (Dkt. 29), given the limited scope of the conference and that the only "court filings/scheduling order" to review were brief entries on the docket, the Court finds it excessive to bill four additional hours to these other tasks.

Then, on March 27, 2020, DRKM billed one-and-a-half hours for reviewing court filings/scheduling order, preparing request for certificate of default, and "follow-up," at a cost of $300. (Ex. 1, Dkt. 36-2, at 6.) The certificate of default was never filed, as Plaintiffs instead sought to enforce the Stipulated Settlement, and the only "court filing/scheduling order" issued after March 12, 2020 (the previous date on which counsel reviewed "court filings/scheduling order") were Plaintiffs' own proposed judgment (*see* Dkt. 29) and two brief entries on the docket

---

[6] "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

(*see* 3/17/2020 Scheduling Order, 3/27/2020 Scheduling Order). The Court also finds this time entry to be both excessive and unnecessary.

Given that most of the time entries provided by DRKM contain vague descriptions, that more than half of the time entries provided are block-billed, and that the Court finds a number of the entries to be excessive and/or unnecessary, the Court concludes that the request for 28.4 hours is unreasonable. *See Gesualdi*, 5 F. Supp. 3d at 281 ("Courts have found that 25 hours is a typical amount of time to spend on a straightforward ERISA default case.") (collecting cases). The Court notes that this case was more than straightforward. Pavers has neither responded to, nor opposed, any of Plaintiffs' efforts to enforce the Stipulated Settlement,[7] and the Court has permitted Plaintiffs to choose how to proceed. Therefore, the Court finds that a 10% reduction in hours across-the-board is justified. *See Cent. Fur Storage Co.*, 2019 WL 3937132, at *13 (recommending a 25% across-the-board reduction in hours where time entries were "impermissibly vague" and finding 58.25 hours of work on a relatively straightforward ERISA default matter to be excessive). The Court awards attorneys' fees in the amount of $5,269.50.

### III.   Costs

For the period of time related to enforcement of the Stipulated Settlement, Minnefor also requests $1,969.62 in costs: $1.60 for PACER charges and $1,968.02 for Westlaw research. (Dkt. 36-1 ¶¶ 9-10; Ex. 1, Dkt. 36-2, at 7.) Computerized research, including on Westlaw and PACER, are "merely a substitute for an attorney's time that is compensable under an application for

---

[7] On February 20, 2020, Defendants' counsel advised the Court that it did not know whether Pavers still existed as an entity (though the New York State Department of State, Division of Corporations website lists it as an "Active" corporation), did not have an ongoing relationship with Pavers, and, having had no contact with Pavers, did not know of its intentions with respect to this matter. (Dkt. 26.)

13

attorneys' fees and is not a separately taxable cost."[8] *See United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir.1996); *Bauta v. Greyhound Lines, Inc.*, No. 14-CV-3725 (RER), 2019 WL 8060181, at *6 (E.D.N.Y. June 17, 2019) (denying request for PACER fees); *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475 (SA) (AKT), 2018 WL 7291396, at *15 n.7 (E.D.N.Y. Aug. 24, 2018) (noting that several recent decisions in this district have denied requests for Westlaw and LexisNexis research fees in the context of fee-shifting statutes following *Merritt*, and collecting cases), *report and recommendation adopted in relevant part*, 9/27/2018 Docket Order; *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (RER), 2015 WL 5178119, at *6 (E.D.N.Y. Sept. 3, 2015) (denying request for Westlaw and LexisNexis research fees); *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *19 (E.D.N.Y. Sept. 1, 2015), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (denying request for PACER, Lexis, and legal research fees); *see also Bd. of Trs. of the Laborers Pension Fund of Local Union No. 186 v. Casale Constr. Servs., Inc.*, No. 18-CV-00583 (MAD) (DJS), 2018 WL 6047825, at *5 (N.D.N.Y. Nov. 19, 2018) (denying request for Lexis research fees because "[t]he cost of the computer service used in the research is no more reimbursable than the

---

[8] The Court notes that "ERISA provides for the recovery of costs associated with the litigation, *see* 29 U.S.C. § 1132(g)(2)(D), and [a] court will generally award those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee paying clients," such as costs associated with filing, service of process, postage, and photocopying. *See Trs. of Empire St. Carpenters Annuity, Apprenticeship, Labor-Mgmt. Coop., Pension & Welfare Funds v. Gregory*, No. 14-CV-2900 (ADS) (SIL), 2015 WL 1611307, at *8 (E.D.N.Y. Apr. 10, 2015) (internal quotation marks and citation omitted); *Cent. Fur Storage Co.*, 2019 WL 3937132, at *13 ("Plaintiffs are entitled to recover costs that are incidental and necessary to the litigation, which may include filing fees, process servers, postage, and photocopying." (internal quotation marks and citation omitted)). Putting aside that this petition is not in fact a request for costs under ERISA, Minnefor has not argued that PACER and Westlaw costs are normally charged to paying clients.

cost of the West's Keynote Digests and the volumes of the Federal Reporter and the Federal Supplement that lawyers used to use (and many still use) to find authority and research issues of law" (citation omitted)). Accordingly, the Court denies the request for PACER and Westlaw costs.

## CONCLUSION

The motion for attorneys' fees and costs is granted in part and denied in part. Plaintiffs' counsel is awarded $5,269.50 in attorneys' fees associated with the enforcement of the Stipulated Settlement. The request for Westlaw and PACER costs is denied. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 8, 2020
      Brooklyn, New York